IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRAYLON HUTCHISON
ADC #176486                                                                                                          PLAINTIFF

v.                                            4:20-cv-00779-LPR-JJV

KEVIN SMITH,
Former Jail Administrator, Lonoke County; *et al.*                                        DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.      INTRODUCTION**

Braylon Hutchison ("Plaintiff") is a prisoner in the Arkansas Division of Correction ("ADC"). He has filed a *pro se* Complaint and an Amended Complaint, pursuant to 42 U.S.C. § 1983, alleging Defendants former Jail Administrator Kevin Smith, current Jail Administrator Kristie Flud, and Correctional Officer Dillon Berryman violated his constitutional rights while he was a pretrial detainee at the Lonoke County Detention Center ("LCDC"). (Docs. 2, 7.) Plaintiff's remaining claims are that: (1) Defendant Berryman used excessive force against him on February 17, 2020; (2) Defendants Smith and/or Flud subjected him to unconstitutional conditions

1

of confinement by putting a hasp and pad lock on his cell door; (3) Defendants Smith and/or Flud violated his due process rights by keeping him in administrative segregation after his disciplinary time expired; and (4) Defendants Smith and Flud discriminated against him by denying him trustee status and disciplining him based on his race.[1]  (*Id.*)  Plaintiff is proceeding with these claims against Defendants in their individual capacities, and he seeks two million dollars in damages. (*Id.*)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to qualified immunity.  (Docs. 43-45, 46, 48.)  Plaintiff has not filed a Response, and the time to do so has expired.  (Doc. 47.)  Thus, the facts in Defendants' Statement of Undisputed Facts are deemed admitted.  *See* Local Rule 56.1(c); *Jackson v. Ark. Dep't of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001).  After careful consideration and for the following reasons, I recommend the Motion be GRANTED; Plaintiff's claims against Defendants Smith, Flud, and Berryman be DISMISSED with prejudice; and this case be CLOSED.

## II.     SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.   Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials but

---

[1] All other claims and Defendants have been previously dismissed without prejudice.  (Docs. 29, 38.)

must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.   FACTS

Sometime in 2020, Plaintiff was arrested on first-degree battery and aggravated assault charges as well as violating his probation. (Doc. 48-1.) The violent nature of the charges made Plaintiff eligible for assignment to administrative segregation for the safety of the other detainees and the security of the jail. (*Id.*, Doc. 48-9 at 17.) However because the population in administrative segregation was "large," Defendant Smith decided to assign Plaintiff to general population. (Doc. 48-1.)

On February 17, 2020, Defendant Berryman noticed a uniform shirt covering the light in Plaintiff's cell. (Doc. 7 at 3-4.) Plaintiff says, "Berryman snatched the shirt off the light cover and threw it at me and hit me in the face with it while I was sleeping." (*Id.*)

During evening pill call on March 4, 2020, Plaintiff entered another detainee's cell and got into a fight. (Docs. 48-1, 48-2, 48-3.) Both detainees received warnings, instead of being put in administrative segregation, because it was unclear who was the aggressor. (*Id.*)

On March 8, 2020, Plaintiff got into another fight with a detainee. (Docs. 48-1, 48-2, 48-

3

4, 48-5.)  Plaintiff waived a disciplinary hearing and admitted to starting the fight.  (*Id*.)  He was then placed in administrative segregation for seven to fourteen days, depending on his behavior while so confined.  (*Id*.)  Detainees in administrative segregation are in their cells twenty-three hours a day.  (*Id*.)  But they still have access to the phone, can use the kiosk, and visit with legal counsel.  (*Id*.)  After completing his period of administrative segregation, Plaintiff returned to general population.

On April 4, 2020, Plaintiff, Edward French, and Tyler Taylor beat Alvin Manley with weapons they made from broom and mop handles.  (Docs. 48-1, 48-2, 48-6, 48-7.)  Plaintiff and Manley are black, while French and Taylor are white.  (*Id*.)  Taylor was transferred to the ADC before he could have a disciplinary hearing.  (*Id*.)  French was found guilty and spent three days in administrative segregation.  (*Id*.)  Plaintiff waived his right to a disciplinary hearing and was ordered to spend seven to fourteen days in administrative segregation.  (*Id*.)  Soon after he arrived in administrative segregation, Plaintiff got into an argument with a detainee and was warned that his time could be extended if he continued to cause problems.  (*Id*.)

On April 12, 2020, Plaintiff got into a confrontation with Defendant Berryman while he was still in administrative segregation for his April 4, 2020 disciplinary conviction.[2]  (Docs. 48-1, 48-2, 48-8).  As punishment, Plaintiff received an additional seven days in segregation, which was set to expire on April 20, 2020.  (Doc. 48-8.)  Sometime during that period, Defendant Smith or Flud decided Plaintiff should be reassigned to administrative segregation, and not returned to general population, due to his history of violence against other detainees and LCDC

---

[2] In his affidavit, Defendant Smith says it was an "assault."  (Doc. 48-1 at 4.)  But the disciplinary documents say Plaintiff failed to obey an order.  (Doc. 48-8 at 1.)

4

staff.³   (Docs. 48-1, 48-2.)

IV.   **DISCUSSION**

Defendants Smith, Flud, and Berryman argue they are entitled to qualified immunity from all of Plaintiff's remaining claims.  I agree.  Qualified immunity protects government officials from § 1983 liability for damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021). Whether qualified immunity applies to this case is a question of law, not fact, for the court to decide.  *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019).

Defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff, does not establish a violation of a constitutional right; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021).  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."  *Pearson* 555 U.S. at 236; *Mogard v. City of Milbank*, 932 F.3d 1184, 1188 (8th Cir. 2019).  Defendants argue they are entitled to qualified immunity based on the first prong.  (Doc. 44 at 23.)   I will discuss qualified immunity as to each claim separately.

   A.   **Excessive Force Claim**

Plaintiff says Defendant Berryman used excessive force on February 17, 2020 when he hit

---

³ It is unclear when Defendant Flud replaced Defendant Smith as the Jail Administrator.

him in the face with a shirt while he was sleeping. Because he was a pretrial detainee, that claim falls under the due process clause of the Fourteenth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). To proceed to trial, a pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97. The defendant's state of mind is not a matter a plaintiff must prove. *Id*. And, objective reasonableness turns on the "facts and circumstances of each particular case." *Id*. at 397. When determining whether the use of force was objectively reasonable, the fact finder may consider the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any effort made by the officer to temper or limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was actively resisting. *Id*.; *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017).

Defendant Berryman has not filed an affidavit admitting or denying Plaintiff's allegations. Instead, he argues he is entitled to qualified immunity because Plaintiff suffered no injuries. (Doc. 44 at 16-20.) But the *de minimis* injury rule has been abrogated. *Wilkins v. Graddy*, 559 U.S. 34, 37-38 (2010); *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013); *Chambers v. Pennycook*, 641 F.3d 898, 901 (8th Cir. 2011). Instead, "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of the force applied, is not in and of itself a threshold requirement for proving" an excessive force claim. *Santiago*, 707 F.3d at 990; *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010). It is only a factor. *Chambers*, 641 F.3d at 906 ("it is logically possible to prove an excessive use of <u>force</u> that caused only a minor <u>injury</u>, and a rule that forecloses a constitutional claim in that circumstance focuses on the wrong question") (emphasis in the original).

It is undisputed LCDC rules explicitly prohibit detainees from covering "the intercom

systems, lights, or sprinkler heads." (Doc. 48-12 at 2.) Thus, Defendant Berryman argues it was objectively reasonable for him to remove the shirt from Plaintiff's light fixture. (Doc. 44 at 15.) But that argument falls short. The pertinent issue is whether Defendant Berryman went too far by throwing the shirt in Plaintiff's face as he was allegedly sleeping and posing no security threat. "Section 1983 is intended to remedy egregious conduct, and not every assault or battery which violates state law will create liability under it." *Askew v. Millerd*, 191 F.3d 953, 958 (8th Cir. 1999). Thus, a "*de minimis* quantum of force is not actionable under the Due Process Clause." *Jackson v. Buckman*, 756 F.3d 1060, 1067-68 (8th Cir. 2014). Defendant Berryman's alleged behavior of throwing a shirt in Plaintiff's face, while offensive and probably unwarranted based on Plaintiff's version of events, is not sufficiently severe to sustain a constitutional violation. *Id*. (no due process violation when a nurse "karate hit" a detainee's nose). Accordingly, I conclude Defendant Berryman is entitled to qualified immunity on this excessive force claim.

### B.    Unconstitutional Conditions of Confinement Claim

Plaintiff claims that while he was in administrative segregation, Jail Administrator Smith and/or Flud subjected him to unconstitutional conditions of confinement by putting a hasp and padlock on his cell door. (Docs. 2, 7.) Plaintiff says doing so created a fire hazard and caused his meals to be delivered late because jailers often did not have the correct key to open his cell door. (*Id.*)

Because he was a pretrial detainee, Plaintiff's conditions of confinement claim falls under the due process clause of the Fourteenth Amendment, which prohibits pretrial detainees from being confined in conditions that amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906-07 (8th Cir. 2020). The "government may detain defendants pretrial and may subject them to the restrictions and conditions of a detention

7

facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Stearns,* 957 F.3d at 907 (quoting *Bell,* 441 U.S. at 536–37). Obviously, pretrial conditions are punishment if they are "intentionally punitive." *Id.* Less obviously, pretrial conditions constitute punishment if they are "not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.* Stated differently, pretrial conditions can be deemed punishment if they are "arbitrary or excessive."[4] *Id.*; *see also Karsjens v. Lourey*, 988 F.3d 1047 (8th Cir. 2021).

In his affidavit, Defendant Smith explains hasps and padlocks were put on the administrative segregation cells because the detainees damaged the electronic locking mechanism making it possible for them to get out of their cells and into others without approval or notice. (Doc. 48-1 at 6.) He says this created an extremely dangerous situation for guards and detainees. (*Id.*) And, according to Defendant Smith, the shift supervisor, medical officer, and deputies on duty always had access to the padlock keys. (*Id.*) Plaintiff has not come forward with any

---

[4] In their original Brief, Defendants argued the deliberate indifference test under the Eighth Amendment applied to this claim. (Doc. 44.) I entered an Order that explained the proper legal test (for this and other claims applying the wrong legal standards), cited to relevant case law, and gave Defendants an opportunity to re-Brief. (Doc. 47). Nevertheless, Defendants continue to incorrectly mingle the objectively reasonable test that applies to conditions claims brought by pretrial detainees under the Fourteenth Amendment with the subjective deliberate indifference test that applies to conditions claims raised by convicted prisoners under the Eighth Amendment. (Doc. 48 at 3-6). For instance, Defendants assert: "The second prong of the conditions of confinement test for pre-trial detainees dovetails with the constitutional standard under the Eighth Amendment conditions of confinement jurisprudence requiring that the alleged **unconstitutional condition resulted from 'deliberate indifference' on the part of the defendant."** (Doc. 48 at 4) (emphasis in the original); *see Na'im v. Springfellow*, No. 4:21-cv-1154-DPM, 2022 WL 1631311, at *1 (E.D. Ark. May 23, 2022) (advising "bold type in text is the typographical equivalent of shouting. The Court discourages this."). However, in *Stearns v. Inmate Serv. Corp.*, 957 F.3d 902 (8th Cir. 2020), which was cited in my Order, the Eighth Circuit specifically held the deliberate indifference standard does not apply to conditions claims raised by pretrial detainees. *Id.* at 907-08.

evidence to contradict Defendant Smith's testimony, establish the padlocks and hasps were intentionally punitive, or suggest their use was not reasonably related to the legitimate purpose of maintaining safety and security at the jail. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) ("When the movant makes a *prima facie* showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact"). And nothing in the record indicates their use was excessive or arbitrary in relation to that purpose. *See Gilliam v. Staley*, No. 4:19-cv-356, 2022 WL 831499-JM-JTR (E.D. Ark. Feb. 25, 2022), *recommendation adopted,* 2022 WL 829596 (E.D. Ark. Mar. 18, 2022) (finding use of padlocks on pretrial detainee's cell at the LCDC as not a Fourteenth Amendment violation). Thus, I conclude Defendants Smith and Flud are entitled to qualified immunity on this claim.

C. **Administrative Segregation Claim**

Plaintiff says Defendants Flud and/or Smith violated his due process rights under the Fourteenth Amendment by keeping reassigning him to administrative segregation after his disciplinary time expired on April 20, 2020.[5] (Doc. 7 at 2.) As previously discussed, the due process clause provides a pretrial detainee with greater protections from punishment than a convicted prisoner. *Bell,* 441 U.S. at 535; *see also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). Thus, a "pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less." *Higgs v. Carver,* 286 F.3d 437, 438 (7th Cir. 2022); *see also Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992) (When a detainee "is deprived of privileges or placed in a special confinement

---

[5] Defendants have not clarified which one of them reassigned Plaintiff to administrative segregation.

status in order to punish him for past misconduct, then due process requires some kind of hearing beforehand"). It is undisputed Plaintiff received notice of the disciplinary charges and waived his right to a hearing. However, Plaintiff says his permanent reassignment to administrative segregation sometime around April 20, 2020 was impermissible punishment.

"[N]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996). Specifically, no due process is required if a pretrial detainee "is placed in segregation not as punishment but for managerial reasons" such as "to protect himself from other prisoners, or to protect jail staff from his violent propensities." *Higgs,* 286 F.3d at 438. This is because the placement in segregation is reasonably related to the legitimate governmental objective of maintaining order and security in the jail, and not for the purpose of punishing the detainee. *See Bell,* 441 U.S. at 538–40. Stated differently, due process is not necessary in the absence of punishment. *See Ferguson v. Cape Giradeau Cty.*, 88 F.3d 647, 650 (8th Cir. 1996) (no procedural due process protections were necessary before placing a detainee in an observation cell because doing so was to protect the detainee, who complained of chest pains, and not to punish him); *Whitfield v. Dicker*, No. 01-3605, 2002 WL 362920, *1 (8th Cir. Mar. 8, 2002) (pretrial detainee was not entitled to due process before being moved to administrative segregation because he was moved for "institutional security" and not for "punitive reasons").

It is undisputed that by April 20, 2020, Plaintiff had received several disciplinary convictions and warnings for fighting with other detainees and being disruptive at the jail. Defendants says every time they put Plaintiff back into general population, he would attack another detainee. And "it was clear" Plaintiff's "placement in general population was not possible for the

10

safety of himself and others."[6] (Doc. 48-1 at 6.) Plaintiff has not offered any evidence suggesting his reassignment to administrative segregation was for punishment, instead of for the "legitimate governmental objective" of maintaining order and security in the jail. Accordingly, I conclude Defendants are entitled to qualified immunity on this due process claim.

### D. Racial Discrimination Claim

Plaintiff says Defendants Smith and Flud racially discriminated against him in two ways. "The Equal Protection Clause generally requires the government to treat similarly situated people alike." *In re Kemp*, 849 F.3d 900, 909 (8th Cir. 2018). To defeat qualified immunity and proceed to trial on his equal protection claims, Plaintiff must have evidence: (1) he was treated differently from similarly situated inmates; and (2) the different treatment was the result of intentional and purposeful racial discrimination. *See In re: Kemp*, 894 F.3d at 909-10; *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008). I will discuss Plaintiff's racial discrimination claims separately.

#### 1. Trustee Status

First, Plaintiff says Defendant Smith racially discriminated against him by not allowing him to become a jail trustee while letting Basil Ryan, a white detainee with four convictions for sexual assaults, to do so. (Docs. 2, 7.) However, Plaintiff has not offered any evidence substantiating his allegations about Ryan's trustee status or criminal history. *See In re Kemp*, 894 F.3d at 909 ("Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim"). And as

---

[6] Defendant Steven's decision was consistent with Sections 6 and 14 of the LCDC's policy which say detainees who pose a threat to staff, themselves, other detainees, or the security of the detention facility shall be segregated. (Doc. 48-9 at 27, 46-47.)

11

will be explained below, there is no evidence Ryan was a disciplinary problem at the jail like Plaintiff. "Dissimilar treatment of dissimilarly situated persons does not violate equal protection." *See Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994). Thus, the evidence is lacking on the first element of Plaintiff's discrimination claim.

Plaintiff's also does not have evidence of the second element; *i.e.,* the different treatment was the result of intentional and purposeful racial discrimination. Section 8 of the LCDC's policies say that to become a trustee a detainee: (1) must "be charged with a misdemeanor or non-violent, non-weapons felony crime"; and (2) cannot "have disciplinary reports as a pre-trial or sentence detainee." (Doc. 48-9 at 35.) Based on the undisputed evidence, Plaintiff was ineligible to become a trustee because he was facing felony charges of aggravated assault and first degree battery, and he had numerous disciplinary convictions while at the LCDC, including attacking another inmate with a weapon. Defendant Smith declares in his affidavit he denied Plaintiff trustee status for these non-racially motivated reasons, and he says he granted trustee status to racial minorities while he was the jail administrator. (Doc. 48-1 at 6.) Plaintiff has not refuted these assertions or substantiated his pure speculation that Defendant Smith's decision to deny him trustee status was racially motivated. *See Glover v. Bostrom*, 31 F.4th 601, 605 (8th Cir. 2022) (pretrial detainee's "unsubstantiated allegation" of racial discrimination was not enough to defeat qualified immunity). To avoid summary judgment, a prisoner must "identify affirmative evidence from which a jury could find proof of the pertinent motive, race discrimination." *Lewis*, 486 F.3d at 1028. Because Plaintiff has not done so, I conclude Defendant Smith is entitled to qualified immunity on this equal protection claim.

### 2. Administrative Segregation

Plaintiff also alleges Defendant Smith and Flud racially discriminated against him by

12

putting him and other black detainees in administrative segregation more often and for longer durations than white prisoners. (Doc. 7 at 4.) Again, Plaintiff has not come forward with any evidence to support these conclusory allegations. *See Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010) (to avoid summary judgment, "the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor"). In regard to the April 4, 2020 attack of detainee Manley, Plaintiff says he received seven to fourteen days in administrative segregation while French and Taylor, the white detainees who participated in the beating, received lesser sentences. (Doc. 7 at 4.) Defendant Smith explains Taylor was transferred to the ADC before disciplinary action could be taken and French received only three days in administrative segregation because there was no physical evidence he was involved in the attack. (Doc. 48-1 at 4.) Plaintiff has not come forward with contrary evidence. And he has not produced any evidence showing French received a lesser time in segregation despite having a disciplinary history of violence and disobedience at the jail similar to Plaintiff's. As previously said, detainees who are not similarly situated may be treated differently. *See Gilani v. Matthews*, 843 F.3d 342, 348 (8th Cir. 2016) (to establish an equal protection violation, the "two groups must be similarly situated in all relevant respects"); *Habhag v. Hon*, 536 F.3d 963, 967 (8th Cir. 2008) (affirming summary judgment where a plaintiff failed to produce evidence demonstrating that he was treated differently than similarly situated individuals). For these reasons, I conclude Defendants are also entitled to qualified immunity on this equal protection claim.

## V.     CONCLUSION

IT IS, THEREFORE, RECOMMENDED:

1.     Defendants' Motion for Summary Judgment (Doc. 43) be GRANTED; Plaintiff's claims against Defendants Smith, Flud, and Berryman be DISMISSED with prejudice; and this

case be CLOSED.

2.     The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

DATED this 16th day of June 2022.

                                                    JOE J. VOLPE
                                                    UNITED STATES MAGISTRATE JUDGE